IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| EDWARD GRAZIANO, ) | |
| ) | |
| Plaintiff ) | 1:22-CV-00163-RAL |
| ) | |
| vs. ) | RICHARD A. LANZILLO |
| ) | Chief United States Magistrate Judge |
| PENNSYLVANIA DEPARTMENT OF ) | |
| CORRECTIONS, LT. DEAL, LT. ) | ORDER ON MOTION FOR LEAVE TO |
| HAGGERTY, CERT OFFICERS # 1-6, ) | TAKE DISCOVERY |
| BRIAN BYERS, LIBRARIAN CRILEY, ) | |
| DERECK F. OBERLANDER, SUSAN R. ) | ECF NO. 159 |
| ADAMS, EARNEST MONGELLUZZO, ) | |
| LISA REEHER, THERESA BIEL, ANGEL ) | |
| F. GRESSEL, BRUCE SIMONS, RICHARD ) | |
| CAMACHO, KIMBERLY SMITH, KEVIN ) | |
| COWAN, ANDREW LESLIE, YVETTE ) | |
| PERRIN, GREGORY MILLER, ) | |
| MICHELLE CROWTHER, LISA FISCUS, ) | |
| LT. BOGARDUS, CO 1 MORGAN, CO 1 ) | |
| MINICH, CO 1 WITNESS OF DC-141, ) | |
| PART D2, LT. DICKEY, ERIN MILLER, ) | |
| ROSS MILLER, CENTURION, ) | |
| WELLPATH, AND IAN GUSSTAFSON, ) | |
| ) | |
| Defendants ) | |

**MEMORANDUM ORDER**

**I.     Introduction**

Pending before the Court is Plaintiff Edward Graziano's motion for leave to serve additional discovery pursuant to the Court's pretrial scheduling order. ECF No. 159. Graziano specifically seeks leave to serve interrogatories upon Defendants Oberlander, Dickey, Haggerty, and Deal. *See* ECF No. 159-3. Graziano has also included with his motion a supporting Declaration as well as "instructions" and "definitions" directing these Defendants on how to

respond to the interrogatories. *See* ECF Nos. 159-2, 159-3. For the following reasons, the motion for leave to take discovery will be DENIED.

## II. Background

Graziano, an individual in the custody of the Pennsylvania Department of Corrections ("DOC"), initiated this pro se action against the DOC and twenty-two DOC employees (collectively, "DOC Defendants"),[1] two private companies contracted to provide medical services to DOC inmates (Centurion and Wellpath), three Centurion employees, and Wellpath employee Leslie.[2] *See* ECF 11. Graziano's Complaint asserted seventeen claims pursuant to 42 U.S.C. § 1983 for violations of his rights under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, a claim under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and four Pennsylvania state tort law claims.

On September 30, the Court granted the motion to dismiss filed by Centurion and its employees and granted in part and denied in part the motion to dismiss filed by the DOC Defendants. *See* ECF Nos. 16, 17. Consequently, the following Defendants and claims remain in this action: an ADA Title II claim against the DOC; an Eighth Amendment excessive force

---

[1] All of the individual DOC Defendants except two are employed at the DOC's State Correctional Institution at Forest ("SCI-Forest), where Graziano was previously incarcerated. They are: Superintendent Oberlander, Deputy Superintendent for Centralized Services ("DSCS") Adams, Deputy Superintendent for Facilities Management ("DCFS") Mongelluzzo, Facility Grievance Coordinator/Corrections Superintendent Assistant ("CSA") Reeher, Administrative Officer ("A/O") Biel, Licensed Psychology Manager ("LPM") Simons, Corrections Health Care Administrator ("CHCA") Smith, Psychology Service Specialist ("PSS") Cowan, Corrections Classification and Program Manager ("CCPM") Gustafson, Unit Manager ("UM") Perrin, UM Miller, UM Crowther, Hearing Examiner ("Hex") Fiscus, Lieutenant ("Lt.") Bogardus, Corrections Officer 1 ("CO1") Morgan, CO1 Minich, C/O Barger, C/O Hollanc, C/O Hiller, C/O Shelley, C/O Sibble, and C/O Perkins. The Complaint also refers to one of the DOC Defendants as "CO1 Witness of DC-141, Part 2D". ECF No. 11, ¶ 30. *See id.*, ¶¶ 10-15, 17, 19, 20, 21, 23-29. The remaining individual DOC Defendants are employed at SCI-Camp Hill: Lt. Dickey, Corrections Counselor ("CC") Miller, and UM R. Miller. *See* ECF No. 11, ¶¶ 31-33.

[2] The Centurion employees were Certified Registered Nurse Practitioner ("CRNP") Gressel, CRNP Byers, and Dr. Camacho; and the Wellpath employee is Nurse Practitioner ("NP") Leslie. *See* ECF No. 11, ¶¶ 16, 18, 22.

2

claim and related state law assault and battery claim against Oberlander, Deal, Dickey, Haggerty, Barger, Holland, Hiller, Shelley, Sibble, and Perkins; an Eighth Amendment failure to protect claim against Oberlander and Dickey; two First Amendment retaliation claims against Oberlander; and an Eighth Amendment deliberate indifference to serious medical needs claim against Leslie.

After Leslie and the DOC Defendants answered the Complaint, the Court issued a Case Management Order ("CMO") directing the Defendants to provide Graziano with initial disclosures pursuant to Rule 26(a), all incident reports, grievances, disciplinary reports, and other similar documents in its possession concerning the alleged incident or incidents, and all medical records in their possession, custody, or control regarding Graziano that relate to the claims in the Complaint, by December 20, 2023. *See* ECF No. 116. Leslie timely certified to the Court that he had "produced the documents identified [in the CMO], which were in his possession, to Plaintiff." ECF No. 120. The DOC Defendants timely certified to the Court that they had produced to Graziano:

1. Records from DOC Bureau of Health Care Services pertaining to Plaintiff's 2019 Inmate Disability Accommodation Request;

2. March 18, 2021 letter from SCI-Forest Administrative Officer Biel to Jacqueline DiNardi informing of Ms. DiNardi's visit suspension;

3. Letter dated May 24, 2021, from Defendant Oberlander to Jacqueline DiNardi reinstating her virtual visits with Plaintiff;

4. Plaintiff's grievances 920153 and 920454 related to the visit suspensions;

5. Plaintiff's medical records at SCI-Forest from January 25, 2019 – June 30, 2021;

6. DOC Bureau of Investigation and Intelligence (BII) report 2019-A-314 pertaining to the use of force incident on April 18, 2019, at SCI-Forest involving Plaintiff;

7. Hand held video from the use of force incident at SCI-Forest on 4/18/2019; NOTE: This video has been mailed to the Superintendent's Assistant at SCI Mahanoy.

8. Plaintiff must submit a request slip to schedule a time to view the video.

9. Plaintiff's grievance 798113 related to the 4/18/2019 incident;

10. Plaintiff's grievance history; and 10. Records of 2021 grievance restriction.

ECF No. 119.

The CMO also instructed Graziano to "advise the Court of any further discovery, if any, he deems necessary for the prosecution of this case" *by January 4, 2024.* ECF No. 116. On *January 17, 2024*, Graziano filed a motion for leave to conduct discovery that asked Defendants to produce more than fifty categories of materials. *See* ECF No. 128. More specifically, Graziano requested photographs and five locations of video footage from April 17-19, 2019; April 18-19, 2019 visitors log books and work schedules for DOC Defendants and all Restricted Housing Unit staff; two and a half months of sick call requests; twelve grievance records; a transfer petition; the staff disciplinary records of eight DOC Defendants before April 18, 2021; school records for 2019; 2019 to 2020 leisure library records, activity department records, misconduct history and reports, housing reports, and meal scan history; April 18 to May 31, 2019 exercise, shower, and shave sign-up sheets; two vote sheets; Preventative Health Risk and Suicide Risk Assessment Tools; Approved Visitor's and Phone List for October 2020 to March 2021; all electronically stored information "that relate[s] to Jacqueline N. DiNardi and Edward Graziano"; correspondences between (i) Oberlander and DiNardi from March to April 2021 and (ii) another prison official and DiNardi from December 2020 to May 2021; a Prison Rape Elimination Act ("PREA") Investigation Report; video footage of JA Unit from 7 AM to 4 PM on June 15, 22, and 25, 2021; mental health records from 2019 to 2020 and July to December 2021; and "YWCA records of the teleconferences held with Graziano." *Id.*

4

Despite Graziano's untimely request for additional discovery, the Court granted the motion for additional discovery in part and without prejudice to Defendants' right to object to the approved requests. *See* ECF No. 135. The Court approved Graziano's request for grievance records; sick call requests; photographs; the Preventative Health Risk Assessment Tool; stationary or handheld camera footage from April 17, 18, and 19, 2019 that captured (i) any use of OC spray or other use of force against Graziano and (ii) any medical treatment Graziano received for the injuries he sustained as a result; the complete records (including Graziano's appeals) of DC- 141 Misconduct Reports Nos. DO41166 and D071525; and communications that address Di Nardi's permanent suspension from Graziano's approved visitor or phone list and that were sent between (i) Oberlander and Theresa Biel, Ernest Mongelluzzo, Yvette Perrin, Major Blicha, and DiNardi from March 1 to May 31, 2021 and (ii) Biel and DiNardi from December 1, 2020 to May 31, 2021. *Id.* The Court also ordered Defendants to respond to two of Graziano's requests as if they were an interrogatory asking whether Dinardi was on Graziano's approved visitor and phone list from October 2020 to March 2021. *See id.* The Court denied the remaining requests because they were irrelevant, overly broad and unduly burdensome, and/or disproportionate to the needs of the case. *See id.* The Court additionally granted Defendants' joint motion to extend the pre-trial deadlines, and as such, extended the discovery deadline to April 5, 2024. *See* ECF No. 134.

On February 21, Graziano moved to compel Leslie to respond to the Court's order on his motion for discovery. *See* ECF No. 138. For the reasons fully stated during the February 29, 2024 telephonic mid-discovery status conference (ECF No. 142), the Court denied Graziano's motion for two primary reasons: (1) the motion sought to compel the production of materials the Court had disapproved of in its Order on his motion for discovery, and (2) Leslie did not have

access to the materials Graziano sought, since the materials were in the possession or control of the DOC. *See* ECF No. 143. The Court did, however, permit Graziano to file a motion to compel discovery materials from the DOC Defendants that the Court had approved in its CMO (ECF No. 116) and/or Order on Graziano's motion for discovery (ECF No. 135). *See id.* The Court directed Graziano to mail the motion to the Clerk of Court for filing no later than *April 11, 2024*. *See* ECF No. 143.

On *April 15, 2024*, Graziano filed this second motion to compel discovery. *See* ECF No. 146. This motion was directed at the DOC and again primarily sought the production of materials the Court had denied in its Order on his motion for additional discovery. On May 15, Graziano filed a second motion for leave to conduct discovery that, once more, sought materials the Court had largely disapproved in its initial Order. *See* ECF No. 151. Despite the untimeliness and erroneous substance of these motions, the Court convened a telephonic status conference on May 17, 2024 to address Graziano's concerns. *See* ECF Nos. 147, 150.

At this conference, the Court observed that in its Order on Graziano's first motion for discovery (ECF No. 135), it had denied the majority of discovery materials Graziano was requesting in his second motion to compel and motion for additional discovery. The Court then asked Graziano whether he had received all the discovery materials that the Court had approved in its initial Order. Graziano represented that he was missing certain video footage from April 17-19, 2019, some sick call requests, part of the Other Report No. D041166 record, and many of the emails to, from, and concerning DiNardi.

In response to these representations, the DOC Defendants' elicited testimony from Security Captain Kudrick. The Court credited the DOC Defendants' contention that they did not keep copies of sick call requests and Captain Kudrick's testimony that any videos requested by

6

Graziano that had not already been produced had been overwritten or deleted in the ordinary course of prison operations. Kudrick explained that the footage automatically deletes after a period of time unless the inmate submits a timely request to preserve the footage, and deferred to counsel for the DOC Defendants as to whether Graziano had submitted a proper preservation request. The Court informed Graziano that it could not order the production of that which does not exist. Although the Court noted that Graziano has the right to seek sanctions for spoliation of evidence if he timely and specifically requested the missing video, the Court also observes that the DOC Defendants have already produced what the Court considers to be the relevant videos and that the additional video Graziano seeks appears to tangential at best to his remaining claims. Counsel for the DOC Defendants represented that she had sent Graziano her entire record of Other Report No. D041166 (Part I of DC-144), and that she had previously confirmed with the facility that they possessed no other related documents. The Court noted that the documents Graziano believes are missing, which pertain to Graziano's appeal of his Administrative Custody status, appear irrelevant to the case anyway. The Court next noted that the DOC Defendants had properly responded to the Court's modification of Graziano's first request for discovery by answering the question of whether DiNardi was on his approved phone list. *See* ECF No. 135 ("Requests Nos. 3 and 4 are disapproved as stated but approved as modified: Defendants are ordered to respond to each request as if it were an interrogatory asking whether Dinardi was on Graziano's approved visitor and phone list from October 2020 to March 2021."). The Court nevertheless directed counsel for the DOC Defendants to ensure the accuracy of her response.

For the reasons fully explained on the conference record, the Court concluded by granting in part and denying in part Graziano's motion to compel (ECF No. 146). Specifically, the Court directed the DOC Defendants to provide Graziano with any emails in their possession that fell

7

within the Court's previously approved modification of Graziano's discovery request. *See* ECF No. 157 (citing ECF No 135) ("Defendants shall only provide emails limited to (1) communications that address DiNardi's permanent suspension from Graziano's approved visitor or phone list and (2) were sent between Oberlander and Theresa Biel, Ernest Mongelluzzo, Yvette Perrin, Major Blicha, and DiNardi from March 1 to May 31 2021; and Biel and DiNardi from December 1, 2020 to May 31, 2021."). The Court denied the motion to compel in all other respects, as well as Graziano's second motion (ECF No. 151) for additional discovery, as more fully explained on the record. *See id*.

Although the Court did not re-open discovery, it did permit Graziano to file a final motion for leave to take discovery. *See* ECF Nos. 155, 156. The Court admonished Graziano that any further discovery requests had to be tailored to the remaining claims, proportional to the needs of the case, and within the bounds of the information the Court had approved in its CMO and Order on his first motion for discovery. *See id*. The Court warned Graziano that the Court would summarily deny leave to serve any further discovery requests if his motion proposed requests were obviously disproportional to the needs of the case, irrelevant, or targeted information the Court had already determined to be beyond permissible discovery. *See id*. On June 3, 2024, Graziano submitted this final motion for leave to take discovery. *See* ECF No. 159.

### III. Standard of Review

Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, and prescribes certain limits to that discovery. That rule provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any

8

> nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). *See also Thuy Vo v. Gilmore*, 2020 WL 1061681, at *2 (W.D. Pa. Mar. 5, 2020), *objections sustained in part and overruled in part sub nom.*, *Thuy Van Vo v. Gilmore*, 2020 WL 1935519 (W.D. Pa. Apr. 22, 2020). "[E]vidence is relevant only if it has a 'tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" *Brooks v. Price*, 121 Fed. Appx. 961, 967 (3d Cir. 2005) (quoting Fed. R. Evid. 401).

Rulings regarding the proper scope of discovery, and the extent to which further discovery responses may be compelled, are matters committed to the court's judgment and discretion. *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). *See also Cartagena v. Service Source, Inc.*, 328 F.R.D. 139, 143 (M.D. Pa. Sept. 6, 2018) (quoting *Halsey v. Pfeiffer*, 2010 WL 3735702, at *1 (D.N.J. Sept. 17, 2010) (citing *Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.*, 174 F.R.D. 572, 585 (D.N.J. 1997))) ("District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes"). A court may limit discovery if the discovery sought is unreasonably cumulative, duplicative, readily obtainable from some other source, outside the scope permitted by Rule 26(b)(1), or the party seeking discovery has already had ample opportunity to obtain the information through discovery. *See Morales Vasquez v. Pennsylvania Dep't of Corr.*, 2021 WL 1600479, at *2 (W.D. Pa. Apr. 23, 2021) (citing Fed. R. Civ. P. 26(b)(2)(C)); *Ivy v. Johnson*,

2021 WL 322170, at *1 (M.D. Pa. Feb. 1, 2021). "Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information." *Robinson v. Folino*, 2016 WL 4678340, at *2 (W.D. Pa. Sept. 7, 2016) (quoting *Jackson v. Beard*, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014)). *See Smith v. Rogers*, 2017 WL 544598 (W.D. Pa. Feb. 9, 2017).

The moving party "bears the initial burden of showing the relevance of the requested information." *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that burden is satisfied, the party resisting the discovery must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. *See Morales Vasquez*, 2021 WL 1600479, at *1 (citing *Ivy*, 2021 WL 322170, at *1). With these principles in mind, the Court turns to Graziano's third and final motion for leave to take additional discovery beyond the deadline set by the Court.

## IV. Discussion

The proposed additional discovery requests appended to Graziano's motion are consistently compound, often argumentative, are of dubious relevance, and far exceed the needs of this case. The motion will, therefore, be denied. Graziano's latest wave of proposed discovery is comprised to interrogatories directed at Oberlander, Dickey, Haggerty, and Deal. *See* ECF No. 159-3, at 1-18. Rule 33(a)(1) of the Federal Rules of Civil Procedure provides that "a party may serve . . . no more than 25 written interrogatories, including all discrete subparts," unless the court allows for more. The scope of the interrogatory "may relate to any matter that may be inquired into under Rule 26(b):" "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 33(a)(2).

The interrogatories presented in Graziano's motion far exceed the number of interrogatories (25) allowed by Fed. R. Civ. P. 33. Graziano proposes three-three numbered interrogatories directed to Oberlander, twenty-two to Dickey, twenty-four to Haggerty, and twenty-five to Deal. *See* ECF No. 159-3, at 1-18. The actual number of interrogatories directed to each Defendant, however, is much greater each interrogatories includes multiple inquiries or subparts. For example, Graziano's proposed interrogatory no. 23 to Haggerty asks: "Did you receive training in hostage negotiations and/or de-escalation tactics before 4/18/2019? I [sic] so, when? Did you complete the training? State what the training consisted of? And identify the person(s) or instructors/trainers who provided you that training?"; and his interrogatory no. 9 to Dickey asks: "During your investigation, did you review Graziano's DC-17X, DC-440, DC-707, DC-510 for April 17-19, 2019? If so, did you include them in your investigation report? Did you preserve these documents? If you did not include those documents . . . and/or preserve them, explain why you did not?" ECF No. 159-3, at 14, 11.

Graziano's instructions on how Defendants must respond to the interrogatories effectively increases the number of interrogatories as well. For instance, Graziano directs the Defendants to provide a description of any document they refer to in their responses and "[the document's] date, name and address of the person from whom the document originated, name and address of the person (if any), to whom it was directed, and the present location and custodian of the document"; and similarly exhaustive information for any person Defendants refer to in their responses. ECF No. 159-3, at 2. Accordingly, in violation of Fed. R. Civ. P. 33(a), Graziano's motion for leave to take discovery seeks to serve Oberlander, Dickey, Haggerty, and Deal with far greater than 25 written interrogatories per Defendant.

Most of these interrogatories also concern information not subject to discovery under Fed. R. Civ. P. 26(b) and previously rejected as such by the Court's Order on Graziano's first motion for discovery. Graziano seeks information regarding prison personnel, other inmates, and/or visitors unrelated to this litigation and that is confidential and irrelevant to the case; requests information about his disciplinary and grievance records that is disproportionate to the needs of this case; and targets information that is duplicative of the records he already possesses or else facially irrelevant to the remaining claims and Defendants. As such, the pending motion for leave to take discovery (ECF No. 159) is DENIED with prejudice and no further motions for leave to take discovery shall be entertained.

V.  **Conclusion**

For the foregoing reasons, Graziano's motion (ECF No. 159) for leave to take discovery is DENIED with prejudice.

DATED this 7th day of June, 2024.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE